UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN DAVID MICHOFF, | No. 2:17-cv-02584-MCE-CKD P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| EL DORADO COUNTY, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983. This action is proceeding on the first amended complaint filed September 27, 2018 alleging that defendants Coburn, Cooney, and Morton violated plaintiff's Fourth Amendment rights by using excessive force during his arrest on two separate occasions or by failing to protect him from the use of said force.[1]  See ECF No. 15 (screening order).  Defendants seek summary judgment on the grounds that the claims are barred by Heck v. Humphrey, 512 U.S. 444 (1994), the use of force was objectively reasonable, and defendants are entitled to qualified immunity.  ECF No. 35.  The motion has been fully briefed by the parties.  See ECF Nos. 40-42.  For the reasons discussed below, the undersigned recommends that defendants' motion for summary judgment be granted.

---

[1] Plaintiff continues to refer to defendant Coburn as "Colburn" in his pleadings.

1

I. Legal Standards

A. Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### B. Legal Standards Governing the Use of Force

An excessive force claim in the course of a police officer's seizure of an arrestee is analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989). Objective reasonableness is determined "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. "The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Id. at 396.

The reasonableness of a seizure is determined by balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983). In determining whether the manner of a seizure is objectively reasonable, courts

1    consider: "(1) 'the severity of the intrusion on the individual's Fourth Amendment rights by
2    evaluating the type and amount of force inflicted,' (2) 'the government's interest in the use of
3    force,' and (3) the balance between 'the gravity of the intrusion on the individual' and 'the
4    government's need for that intrusion.'" Lowry v. City of San Diego, 858 F.3d 1248, 1256 (9th
5    Cir. 2017) (en banc) (quoting Glenn v. Washington Cnty., 673 F.3d 864, 871 (9th Cir. 2011)).
6    The government's interest in the force used is determined by assessing (1) the severity of the
7    crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or
8    others, and (3) whether the suspect actively resisted arrest or attempted to escape. Glenn, 673
9    F.3d at 871 (citing Graham, 490 U.S. at 396). Moreover, "[t]he calculus of reasonableness must
10   embody allowance for the fact that police officers are often forced to make split-second
11   judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount
12   of force that is necessary in a particular situation." Graham, 490 U.S. at 396–97.

13   **II.     Defendants' Motion for Summary Judgment**

14          In their motion, defendants first contend that plaintiff's claims related to his February 27,
15   2017 arrest are barred by Heck v. Humphrey, 512 U.S. 444 (1994), because they would imply that
16   plaintiff's conviction for obstructing a peace officer on that day in violation of California Penal
17   Code § 148(a)(1) was invalid. ECF No. 35 at 13-15. Plaintiff has not alleged, much less
18   demonstrated, that this "conviction has been reversed on appeal, expunged by executive order, or
19   declared invalid by a state tribunal." ECF No. 35 at 14. Defendant Coburn argues that the
20   "[c]ourt cannot find in Michoff's favor as to his [excessive force] claim because doing so would
21   require a finding that [defendant] Coburn was not discharging his duty at the time of Michoff's
22   arrest, which is contrary to Michoff's conviction." Id. Because the excessive force claim against
23   defendant Coburn is barred by Heck, the claims against defendants Cooney and Morton for
24   failing to prevent the use of excessive force against plaintiff on that date also fail. ECF No. 35 at
25   14-15.

26          With respect to both dates of arrest, defendant Coburn asserts that he is entitled to
27   qualified immunity because his conduct did not amount to a Fourth Amendment violation and no
28   reasonable officer in his position would have understood his actions as violative of the Fourth

4

1  Amendment. ECF No. 35 at 15-22.

2  Defendants Morton and Cooney further contend that because the underlying excessive force claims fail, the claims against them for failing to prevent the use of excessive force also fail. ECF No. 35 at 22-24. In addition, defendants Cooney and Morton were not present at the time that plaintiff was bitten by the K9 during either arrest, so they are entitled to judgment as a matter of law. ECF No. 35 at 22. Plaintiff "has no evidence to support his allegation that… Cooney and Morton stood nearby and failed to intervene when he was apprehended" by the dog. ECF No. 35 at 22. Lastly, defendant Morton argues that he is also entitled to qualified immunity for his actions on both dates of arrest because the use of force against plaintiff by defendant Coburn was reasonable and there is no clearly established case law demonstrating that he had a realistic opportunity to intercede and failed to do so. ECF No. 35 at 23.

Plaintiff filed an opposition to defendants' summary judgment motion asserting that he was not wanted for, or charged with possessing, any weapons on either arrest date. ECF No. 40 at 2. His criminal history "consists of property crimes and other misdemeanors." ECF No. 40 at 12. For these reasons, plaintiff contends that the government had no significant interest in apprehending him on either occasion. ECF No. 40 at 15. While plaintiff admits to hiding from the arresting officers on the first occasion, he argues that he was coming "out of his house to greet the deputies" on the second occasion. ECF No. 40 at 2, 15. Plaintiff names two witnesses to his arrests, but he does not provide any affidavit or declaration from either one. ECF No. 40 at 4. Plaintiff further disputes the defendants' assertion that they are entitled to qualified immunity. Id. With respect to the Heck bar argument, plaintiff asserts that he "is in no way attempting to challenge his criminal conviction…." ECF No. 40 at 14. In compliance with the Local Rules, plaintiff also filed a separate statement of disputed facts which are under penalty of perjury.[2] ECF No. 41; see Local Rule 260(b).

By way of reply, defendants point out that plaintiff only addresses 9 out of their 81

---

[2] Plaintiff labeled this pleading as a "Reply to Defendants['] Statement of Undisputed Material Facts." Because plaintiff is proceeding pro se and is entitled to have his pleadings liberally construed, the court disregards the label and focuses on the substance of the pleading itself.

5

undisputed facts. ECF No. 42 at 2. With respect to the 9 disputed facts, plaintiff's opposition "mainly consist[s] of non-responsive information that effectively serves as legal argument." ECF No. 42 at 2. Additionally, defendants emphasize that plaintiff offers no evidence or case law opposing the application of Heck to the claims stemming from his first arrest. Id. Lastly, defendants argue that plaintiff used the wrong legal standard in evaluating the use of force claims. ECF No. 42 at 4-5.

### III. Allegations in Plaintiff's First Amended Complaint

In his verified amended complaint, plaintiff alleged that defendant Coburn ordered his police dog to attack him on two separate occasions after plaintiff had already submitted to being arrested by lying on the ground with his hands and arms extended. ECF No. 14 at 3. The first incident occurred on February 27, 2017 after the police arrived at 4721 Highway 1983 in Greenwood, California to "execute a search warrant for stolen property." ECF No. 14 at 3. Plaintiff specifically alleged that on that date, the police dog repeatedly bit his leg "for nine minute[s]" causing "immediate pain, bleeding[,] swelling, [a] laceration[,] soreness, and irreparable damage." Id.

Plaintiff asserted that on May 21, 2017, defendants returned to this same property and ordered him out of the home. Id. After he complied and proned out on the ground, defendant Coburn ordered his police dog to attack plaintiff. Id. Plaintiff was repeatedly bitten in his arms and legs "for several minutes." Id. When plaintiff yelled for help and for medical care for the dog bites, defendant Coburn allowed the police dog to bite plaintiff "several more times." Id.

On both these occasions, defendants Morton and Cooney failed to protect plaintiff from the repeated use of the police dog. ECF No. 14 at 5.

### IV. Undisputed Material Facts[3]

**A. Plaintiff's First Arrest on February 27, 2017**

On February 27, 2017, plaintiff had an outstanding felony warrant for burglary. Defendants' Statement of Undisputed Facts (hereinafter "DSUF") at No. 1. During an El Dorado

---

[3] All facts are undisputed unless otherwise indicated.

County Sheriff's Office briefing, defendants Cooney and Morton received information about the outstanding warrant, details of the underlying crime, including that plaintiff might be in possession of firearms taken during this burglary, and that plaintiff might be staying at his mother's residence. DSUF at No. 2. According to plaintiff, he was wanted for possession of stolen property. ECF No. 41 at 2.

Defendants Cooney and Morton went to plaintiff's mother's house in Greenwood, California. DSUF at No. 3. Plaintiff drove by his mother's house in a stolen pick-up truck and noticed several law enforcement officers standing in the driveway. DSUF at No. 4. Defendant Cooney noticed the truck and suspected that plaintiff was the driver based on the physical description of plaintiff that he had received during the briefing. DSUF at No. 5.

Defendant Cooney got in his patrol car, pulled in behind plaintiff, and activated his forward-facing red emergency lights in order to conduct a traffic stop. DSUF at Nos. 7, 9. When plaintiff did not pull over, defendant Cooney also turned on his emergency siren. DSUF at No. 9. At this point, defendant Cooney notified dispatch that he was pursuing a vehicle that he believed was driven by plaintiff, based on its proximity to the mother's residence as well as the physical characteristics of the driver. DSUF at No. 10. After one-half mile, the truck slowed as it approached a turnoff, and the driver opened the door and began to exit. DSUF at No. 11. Defendant Cooney was able to get a clear view of the driver and confirm that it was, in fact, plaintiff. DSUF at No. 11. The door to the truck closed and plaintiff continued driving, eventually passing a house and turning down an unmarked dirt road where he jumped out near a trailer and storage container. DSUF at No. 12.

Plaintiff ran east toward a largely vegetative area full of trees, brush, and a creek. DSUF at No. 13. Defendant Cooney stopped his patrol car and yelled, "Sheriff's Office, stop," but plaintiff continued to run down a hill and out of sight. DSUF at No. 14. According to defendant Cooney, plaintiff had a piece of paper folded in his left hand while running which defendant Cooney believed might have been obscuring a handgun. DSUF at No. 15. Plaintiff disputes this and indicates that he was holding mail in his hand while running and that he was not arrested with, much less charged for, possessing any weapons on that day. ECF No. 41 at 2; Plaintiff's

1  Deposition at 55:9-10.  At this point, defendants Cooney and Morton set up a perimeter around
2  the area.  DSUF at No. 16.

3        Central dispatch contacted defendant Coburn, a trained K9 handler, to assist in the
4  apprehension of plaintiff.  DSUF at Nos. 17-18.  Defendant Coburn was familiar with plaintiff
5  based on several prior contacts with him.  DSUF at No. 19.  Defendant Coburn knew that plaintiff
6  had an extensive criminal history including multiple felony convictions and was wanted on
7  suspicion of stealing firearms from a residence.  DSUF at Nos. 19-20.  Based on viewing the
8  Automated Court Information System ("ACIS"), defendant Coburn was also aware that plaintiff
9  was listed as a hazard to officers.  DSUF at No. 20.

10        Defendant Coburn responded to defendant Cooney's location with his K9 partner, Eros, to
11  assist with the search.  DSUF at No. 21.  Defendant Cooney told him that he had attempted a
12  traffic stop, but plaintiff refused to stop and eventually fled on foot during which time he saw
13  plaintiff holding what Cooney thought may be a handgun.  DSUF at Nos. 22-23.  Defendant
14  Coburn then gave Eros the command to track plaintiff.  DSUF at No. 26.

15        Defendant Coburn and his K9 tracked plaintiff for approximately one mile at which time
16  Coburn was told that they were only 1/10 of a mile away from plaintiff's mother's residence at
17  4721 Highway 193.  DSUF at Nos. 27-28.  As they continued to search, defendant Coburn
18  noticed that Eros had caught plaintiff's scent, based upon his experience in working with this K9
19  for approximately 5 years.  DSUF at No. 29.  While keeping Eros on his leash, defendant Coburn
20  yelled approximately 5 times: "Sheriff's Department Canine Unit.  Surrender now or I will
21  search with my dog.  He will find you and he will bite you."  DSUF at Nos. 30-31, 34-35.
22  Plaintiff admitted hearing at least two of these announcements, but he did not respond because he
23  knew that he would be arrested if he did.  DSUF at Nos. 32, 36.

24        Eros tracked plaintiff to the edge of an embankment.  DSUF at No. 33.  Defendant Coburn
25  then unleashed Eros who ran down the embankment to the base of a large tree that was
26  approximately 15 feet away.  DSUF at No. 37.  After that, defendant Coburn heard a male voice
27  yelling which he ran towards and saw Eros biting down on plaintiff's right hip area.  DSUF at
28  Nos. 38-39.  Defendant Coburn pointed his service weapon at plaintiff and ordered him to show

his hands. DSUF at No. 40. In response, plaintiff raised his right hand, but kept his left hand near his waistband. DSUF at No. 41. Defendant Coburn continued to approach plaintiff while ordering him to raise both hands where he could see them. DSUF at No. 42. Approximately 20 seconds later when plaintiff complied, defendant Coburn gave Eros the command to release plaintiff. DSUF at No. 43. Eros immediately released his hold. DSUF at No. 44.

Plaintiff was placed in handcuffs by defendant Morton and later transported to Marshall Medical Center by defendant Cooney. DSUF at Nos. 45. Plaintiff received stitches and was cleared for incarceration on the same day. DSUF at No. 47. After being released from custody, plaintiff pulled out the stitches himself several days later. DSUF at No. 50.

**B. Plaintiff's Second Arrest on May 21, 2017**

On May 21, 2017, defendants Coburn and Morton returned to plaintiff's mother's house to attempt to locate him and arrest him on an outstanding felony warrant. DSUF at No. 51. Defendant Coburn had been told that plaintiff might be in possession of a stolen firearm on this occasion. DSUF at No. 52. Defendant Cooney was not present or otherwise involved. DSUF at No. 53.

Defendant Morton knocked on the front door of the residence and announced that he was with the Sheriff's Office while defendant Coburn positioned himself behind the house with his K9, Eros. DSUF at No. 54; ECF No. 35-5 at ¶ 8 (Declaration of Alex Morton). While inside the house, plaintiff heard knocking on the front door followed by the announcement, "El Dorado Police. Come Out." DSUF at No. 56. Plaintiff did not respond to the knocking at the front door, but instead exited through the back door and began to move around the side of the house. DSUF at Nos. 57-58. Plaintiff moved away from the house and towards the foliage that surrounded the house. DSUF at No. 59.

The parties dispute the remaining sequence of events. According to defendant Coburn, he identified himself and ordered plaintiff to stop or he would release his dog. ECF No. 35-6 at ¶ 12 (Declaration of Sgt. Coburn). Plaintiff turned the corner of the house and disappeared from defendant Coburn's view. DSUF at No. 60. At that point, defendant Coburn released Eros and gave him the command to apprehend plaintiff. ECF No. 35-6 at ¶¶ 12-13. Defendant Coburn

9

then heard plaintiff yell, and he ran toward the sound. DSUF at No. 62. According to defendant Coburn, Eros was holding plaintiff's left arm and plaintiff was attempting to push the dog off. ECF No. 35-6 at ¶ 13. Defendant Coburn pointed his weapon at plaintiff and ordered him to show his hands. ECF No. 35-6 at ¶ 13. At that point, plaintiff had not been searched for weapons, so defendant Coburn did not order Eros to release plaintiff until both his hands were visible to ensure that he was not reaching for a weapon. Id. Eros released plaintiff immediately when ordered and had a hold of plaintiff for no more than 35 seconds total, according to defendant Coburn. Id.

According to plaintiff, he exited the back door of the house because the front door was inoperable. ECF No. 35-3 at 26-27; ECF No. 41 at 2. After exiting, plaintiff headed back to the front door "to greet the officers" and "[a]t no time… attempt[ed] to flee from the deputies." ECF No. 41 at 2. Instead, plaintiff contends that he "immediately layed down as ordered." ECF No. 41 at 3.

After Eros released plaintiff, defendant Morton placed plaintiff in handcuffs and the deputies called for a medic unit.[4] DSUF at No. 68. Plaintiff was transported to Marshall Medical Center where he received stitches on his left forearm. DSUF at No. 71. He was cleared for incarceration that same day and transported to the Placerville Jail. DSUF at No. 72. During his incarceration, plaintiff received physical therapy for his left arm injury. DSUF at Nos. 74-75. According to plaintiff, he has lost the ability to grip objects with his left hand. Michoff Depo. 328:5-7.

V.     Analysis

With respect to the argument that the claims related to the February 27, 2017 arrest are barred by Heck v. Humphrey, 512 U.S. 444 (1994), the undersigned recommends denying defendants' summary judgment motion on this ground. First and foremost, the court considers

---

[4] While plaintiff was waiting for the medical unit to arrive, he was placed in the back of a patrol car. The video and audio surveillance from the patrol car were submitted in support of defendants' motion for summary judgment. See ECF No. 43. However, the relevant audio portion is indecipherable and the parties dispute the content. Because the audio recording occurred after the events in dispute, the court does not deem it relevant in resolving the pending motion.

the binding Ninth Circuit decision that concluded that a § 1983 action for excessive force is not necessarily Heck-barred based on plaintiff's conviction under California Penal Code § 148(a)(1) for willfully resisting, delaying, or obstructing a peace officer in the performance of his or her duties. Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005) (en banc). In Smith, the Ninth Circuit reversed the grant of summary judgment in favor of defendants where the record did not disclose the factual basis for plaintiff's guilty plea to resisting arrest. This evidence was critical in evaluating the asserted Heck bar because "the excessive force [against plaintiff] may have been employed against him subsequent to the time he engaged in the conduct that constituted the basis for his conviction" for resisting arrest. Smith,

In this case, while defendants submitted El Dorado County Superior Court records pertaining to plaintiff's resisting arrest conviction, these records fail to demonstrate the factual basis supporting this conviction.[5] Defendants submitted the police reports relating to the February 27, 2017 incident as the factual basis supporting plaintiff's no contest plea to resisting arrest. See ECF No. 35-3 at 52-59. However, the amended plea form that plaintiff signed on January 16, 2018 indicated that plaintiff entered a no contest plea to violating Penal Code 148 in Case No. 227.[6] See ECF No. 36 at 58. The transcript of the plea colloquy indicates that the "misdemeanor charge of resisting or obstructing" in Case No. 227 occurred on May 21, 2017. See ECF No. 36 at 41. Therefore, there is no evidence disclosing the factual basis for plaintiff's resisting arrest conviction. Absent such evidence, the court is unable to conclude that any of plaintiff's claims are barred by Heck. See Smith, 394 F.3d at 697.

In light of this conclusion, the court turns to defendants' additional argument in support of summary judgment that defendant Coburn's conduct did not amount to the use of excessive force violating the Fourth Amendment during either arrest. On a motion for summary judgment, defendant must provide evidence to show that his decision to use his K-9 partner Eros was

---

[5] The court will grant defendants' request for judicial notice of these court records in accordance with Rule 201(b) of the Federal Rules of Evidence. See ECF No. 36.

[6] To make matters even more confusing, the transcript of the plea colloquy predates plaintiff's signature on the amended plea form. There is no indication in the record as to why plaintiff's plea form was amended after it was accepted by the El Dorado County Superior Court on November 27, 2017. See ECF No. 36 at 60.

11

objectively reasonable given the facts he knew at the time. The court will analyze the Graham factors regarding each arrest separately. See Graham v. Connor, 490 U.S. 386 (1989).

### A. February 27, 2017 Arrest

#### 1. Type and Amount of Force Used

Applying the Graham factors, this court first considers the nature and quality of the force used against plaintiff. In this case, the undisputed material facts demonstrate that plaintiff was bitten on his right hip by a police K9 and held until defendant Coburn could travel a distance of 15 feet in order to see both of plaintiff's hands. Ultimately, plaintiff required stitches for his injuries, but no hospitalization or ongoing medical care. This type and amount of force is far less than that described in Miller v. Clark County, 340 F.3d 959 (9th Cir. 2003), which resulted in an injury that went as deep as the bone requiring orthopedic surgery followed by several days of hospitalization. Id. at 961. Based on the undisputed evidence, the court finds that the type and amount of force used did not result in a particularly grave intrusion on plaintiff's Fourth Amendment rights. Compare Miller, 340 F.3d at 964 (concluding that "the intrusion on Miller's Fourth Amendment interests was a serious one.").

#### 2. Government's Interest in the Use of Force

Next, this court considers the governmental interests at stake, mindful of the three factors identified by the Supreme Court in Graham. First, this court considers the severity of plaintiff's crimes. Graham, 490 U.S. at 396. Plaintiff had an outstanding felony arrest warrant, although the parties dispute the underlying felony. The government has a legitimate interest in apprehending criminal suspects, which is even stronger when the crime at issue is a felony. See United States v. Hensley, 469 U.S. 221, 229 (1985) (referring to "the strong government interest in solving crimes and bringing offenders to justice"). Thus, this factor strongly favors the government.

Second, this court considers whether plaintiff posed an immediate threat to the safety of the officers or others, which the Ninth Circuit recognizes as the most important of the three Graham factors. See Mattos, 661 F.3d at 441. Here, the only relevant disputed fact is whether plaintiff had a weapon on him at the time that he fled on foot from defendant Cooney and actively hid from defendant Coburn. However, the court finds that the absence of a weapon does not tilt

this factor in plaintiff's favor. Setting aside defendant Cooney's subjective hunch that plaintiff may have had a handgun, defendant Coburn had viewed information identifying plaintiff as a hazard to officers. Plaintiff does not dispute that fact. This evidence in combination with plaintiff's outstanding felony warrant and the wooded terrain where plaintiff was hiding suggests that officer safety was at risk in this case. See Miller, 340 F.3d at 965 (discussing the potential for a police ambush where suspect fled to the woods). As a result, this factor tilts in favor of defendants, although it is not dispositive.

Third, this court considers whether plaintiff was actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396. In this case, the undisputed material facts indicate that plaintiff first fled from police in a stolen vehicle, then he evaded arrest on foot, and actively hid in a wooded area near his mother's home. Thus, this factor tips heavily in favor of defendants.

Thus, the court finds that all three of the Graham factors concerning the government's interest in the use of force weigh in favor of defendants.

**3. Balance Between the Gravity of the Intrusion and the Need for the Intrusion**

The court must now consider whether the force that was applied was reasonably necessary under the circumstances after balancing the gravity and the need for the intrusion on plaintiff's Fourth Amendment rights. Graham, 490 U.S. at 397. Even when viewed in the light most favorable to plaintiff, all of the factors suggest that the use of the K9 to bite and hold plaintiff was objectively reasonable and plaintiff's Fourth Amendment rights were not violated by defendant Coburn. See Miller, 340 F.3d at 968 (concluding that officer's use of a police dog to bite and hold suspect until deputies arrived on the scene less than a minute later was a reasonable seizure that did not violate the suspect's Fourth Amendment rights); Mendoza, 27 F.3d at 1362–63 (holding that use of police dog to find and secure suspect, which resulted in two dog bites, was objectively reasonable). Accordingly, the undersigned recommends granting defendant Coburn's motion for summary judgment with respect to the February 27, 2017 use of force.

/////

/////

**B.  May 21, 2017 Arrest**

    **1.  Type and Amount of Force Used**

During the course of plaintiff's second arrest, the undisputed material facts demonstrate that all of the force applied by the K9 lasted for no more than 35 seconds.  Plaintiff merely disputes whether he was running away from defendant Coburn or whether he was attempting "to greet" defendant Morton at the front of the house when this happened.  On this occasion, plaintiff's injuries were more severe and required not only stitches but ongoing physical therapy.  However, even on this occasion, the type and amount of force is still far less than that described in Miller v. Clark County, 340 F.3d 959 (9th Cir. 2003).  Id. at 961.  Here, based on the undisputed evidence, the court finds that the intrusion on plaintiff's Fourth Amendment rights was limited considering the nature and quality of force used by defendant Coburn.

    **2.  Government's Interest in the Use of Force**

The court finds that the majority of the Graham factors concerning the government's interest in the use of force weigh in favor of defendants.  Plaintiff had an outstanding felony warrant and posed an additional risk to officer safety based on defendant Coburn's prior history and knowledge of him, including the fact that he had been unable to search plaintiff for any weapons at the time that he released his canine.  The court emphasizes the fact that the outstanding felony warrant for plaintiff's arrest on this occasion was obtained less than three months since plaintiff's last arrest by defendant Coburn.  The serial nature of plaintiff's outstanding felony warrants weighs heavily in favor of defendants.  The material facts concerning whether plaintiff was actively resisting arrest or attempting to evade arrest by flight on this occasion is disputed at the point in time in which defendant Coburn released his K9.  See Graham, 490 U.S. at 396.  Even assuming arguendo that this third factor favors plaintiff, it is still not enough to tip the scale in his favor.  After balancing all of the factors concerning the government's interest in the use of force, the court concludes that this tips slightly in defendants' favor due to the outstanding nature of the felony warrant which they were attempting to serve on plaintiff on May 21, 2017.

/////

### 3. Balance Between the Gravity of the Intrusion and the Need for the Intrusion

Once again, after reviewing the Graham factors, the court concludes that the undisputed material facts demonstrate that the use of the police dog to apprehend plaintiff was objectively reasonable and that his Fourth Amendment rights were not violated. See Miller, 340 F.3d at 968; Mendoza, 27 F.3d at 1362–63. Therefore, the undersigned recommends granting defendant Coburn's motion for summary judgment based on the events of May 21, 2017.

Based on the court's findings that neither arrest amounted to the use of excessive force, the court finds it unnecessary to address defendant Coburn's additional argument that he is entitled to qualified immunity.

### C. Failure to Protect Claims Against Defendants Morton and Cooney

Because the court has found that defendant Coburn's actions did not amount to a Fourth Amendment violation for either date of arrest, summary judgment is also appropriate on the failure to protect claims against defendants Morton and Cooney. Because no excessive force was used against plaintiff by defendant Coburn, the additional defendants did not, as a matter of law, fail to protect plaintiff from any use of excessive force. Furthermore, it is undisputed that defendant Cooney was not even present during plaintiff's May 21, 2017 arrest. For all these reasons, defendants Cooney and Morton are entitled to summary judgment with respect to the failure to protect claims against them.

### VI. Plain Language Summary for Pro Se Party

The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed the pending motion for summary judgment as well as the evidence submitted by the parties and has concluded that the facts of your case are not sufficiently in dispute to warrant a trial. You have fourteen days to explain to the court why this is not the correct outcome in your case. If you choose to do this you should label your explanation as "Objections to Magistrate Judge's Findings and Recommendations." The district court judge assigned to your case will review any objections that are filed and will make a final decision on the motion for summary judgment.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 35) be granted for the reasons indicated herein; and,

2. The Clerk of Court be directed to enter judgment in favor of defendants and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 16, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/mich2584.msj.excess.force.CJRA

16